UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DEBORAH L. ROBBINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-CV-2215-ERW |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner of Operations for | ) |
| Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Deborah Robbins ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF No. 21) and Defendant has filed a brief in support of the Answer (ECF No. 27).

### **I. Procedural History**

Plaintiff filed her application for DIB under Title II of the Social Security Act on March 13, 2014. Plaintiff claimed she became disabled on November 12, 2010, because of spinal stenosis, feet-swelling, neck spurs, arthritis in the right hand and knees, osteoarthritis and a degenerating disk in her back, depression, and the inability to lift anything heavy. (Tr. 164.) Plaintiff was initially denied relief on April 29, 2014. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"), at which Plaintiff and a vocational expert testified. (Tr. 320-61.) At the hearing, Plaintiff amended her disability onset date to December 14, 2012.

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017. She continues to lead the agency as Deputy Commissioner of Operations.

1

(Tr. 44, 157.) After the hearing, by a decision dated May 20, 2016, the ALJ found Plaintiff was not disabled. (Tr. 23-40.) On June 26, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-6.) Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues that: 1) the ALJ erred in weighing the medical opinion evidence because the ALJ gave Plaintiff's treating physician, Dr. Indu Patel's opinion "partial" and not controlling weight; and 2) the ALJ erred in failing to properly consider Plaintiff's residual functional capacity (RFC) as her determination excluded a sit/stand option.

For the reasons that follow, the ALJ did not err in her determination.

## II. Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, the Court adopts Plaintiff's recitation of facts set forth in her Statement of Uncontroverted Facts (ECF 22) and notes that they are admitted in their entirety by the Commissioner (ECF 27-1). The Court also adopts the additional facts set forth in the Commissioner's Statement of Additional Facts (ECF 27-2) and notes they are unrefuted by Plaintiff. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' argument.

## III. Discussion

### A. Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, Robbins must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001);

*Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F.Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider: 1) the credibility findings made by the ALJ; 2) the plaintiff's vocational factors; 3) the medical evidence from treating and consulting physicians; 4) the plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments; 5) any corroboration by third parties of the plaintiff's impairments; 6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question, which sets forth the claimant's impairment. *Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585–86 (8th Cir. 1992) (internal citations omitted). *See also Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1018–19 (E.D. Mo. 2017).

The Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

**B. The ALJ's Decision**

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff met the requirements of the Social Security Act through December 31, 2015, and that she had not engaged in substantial gainful activity since December 14, 2012. (Tr. 28.) The ALJ found that Plaintiff's degenerative disc disease and osteoarthritis were severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 29-30.)[2] Specifically, the ALJ analyzed Plaintiff's eligibility for Listing 1.02 (Major Dysfunction of a Joint), and Listing 1.04 (Disorders of the Spine).

The ALJ found that through December 31, 2015, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), except

> occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl; no hazards such as unprotected heights and moving mechanical parts; frequent handling and fingering with the upper right extremity.

(Tr. 31.) In making this finding, the ALJ summarized the relevant medical records, as well as Plaintiff's own statements regarding her abilities, conditions and activities of daily living. While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, she also found Plaintiff's statements about the intensity, duration and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 31-32.)

The ALJ determined that this RFC prevented Plaintiff from performing her past relevant work as a computer operator. (Tr. 35-36.) Considering Plaintiff's RFC and her age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that

---

[2] The ALJ additionally found that Plaintiff's hypertension, migraine headaches, depression and anxiety were non-severe. (Tr. 29). Plaintiff does not challenge these findings.

Plaintiff could perform work as it exists in significant numbers in the national economy, and specifically, as a data entry operator, clerk typist, and billing clerk. (Tr. 36-37.) The ALJ therefore found Plaintiff not to be disabled. *Id.*

C. **Analysis of Issues Presented**

In her initial brief to this Court, Plaintiff argued that: (1) the ALJ failed to properly evaluate the medical opinion evidence, and (2) the ALJ "failed to properly consider the RFC" because the evidence and "the way the ALJ conducted the examination of the [vocational expert] support a finding that Plaintiff requires a sit/stand option." (ECF No. 21 at 12-15). The Court addresses each of Plaintiff's proffered issues below.

1. **The ALJ Failed to Properly Weigh Opinion Evidence**

In determining whether a claimant is disabled, medical opinions are considered by the ALJ together with the rest of the relevant evidence received. 20 C.F.R. § 404.1527(b). The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c). Generally, more weight is given to opinions of sources who have treated a claimant, and to those who are treating sources.[3] 20 C.F.R. § 404.1527(c)(2); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). The regulations provide that a treating source's opinion on the issue of the nature and severity of the impairment is to be given controlling weight, where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the

---

[3] The regulations describe a treating source as an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). The parties do not dispute that Dr. Patel is a "treating source."

7

record.  20 C.F.R. § 404.1527 (d)(2).  Where controlling weight is not given to a treating source's opinion, it is weighed according to the factors enumerated above.  *Shontos*, 328 F.3d at 426.

Plaintiff argues that the ALJ's decision should be reversed and remanded as the ALJ erred in evaluating the medical opinions because she gave Dr. Patel's medical opinion only "partial weight," instead of the controlling weight it deserved pursuant to 20 C.F.R. § 404.1527(c)(2).  Dr. Patel provided a medical source statement dated June 8, 2015.  Dr. Patel checked boxes on this statement indicating Plaintiff maintained the ability to lift and carry up to ten pounds and stand and walk two hours, but was unable to maintain sustained sitting and needed to rest more than three hours during an eight-hour workday.  (Tr. 268.)  Dr. Patel also checked a box stating Plaintiff would experience frequent interference in her concentration due to her pain. (Tr. 268).

After reviewing the evidence of record, as well as testimony regarding Plaintiff's activities of daily living, the ALJ concluded the severe limitations set forth by Dr. Patel "were not supported by the totality of the evidence of record" (Tr. 35).  Instead, the ALJ found the evidence supported limitations best "characterized as mild to moderate."  (Tr. 33.)  In further explaining why she accorded less weight to Dr. Patel's opinion, the ALJ noted the medical source statement contained inconsistencies, was a pre-printed form questionnaire not designed for objectivity, and that Dr. Patel failed to answer a question about whether Plaintiff could perform sedentary work.  (Tr. 35.)

The ALJ's conclusions are borne out by the Court's review of the record.  Substantial medical evidence on the record supports the ALJ's finding of mild or moderate, versus more severe limitations.  As noted by the ALJ, although Plaintiff alleged disability based on hand problems, on June 11, 2012, she presented with complaints of bilateral hand pain, but her

8

examination revealed no evidence of external swelling and Plaintiff demonstrated excellent finger motion. (Tr. 32, 216.) In addition, x-rays taken of her right hand on the same day showed some degenerative arthritis of the distal ulnar joint, but no evidence of severe joint space narrowing, rheumatoid arthritis, or bone erosion. (Tr. 216, 218). In Dr. Patel's June 2015 medical source statement, she noted swelling and pain in Plaintiff's right hand, but nevertheless indicated Plaintiff had the full ability to use the upper extremities for reaching, pushing, pulling, grasping, holding, gross manipulation, and fine manipulation." (Tr. 268.)

With regard to Plaintiff's complaints of back problems, although she exhibited positive straight leg raises when examined by Dr. Patel, she also exhibited normal strength and reflexes and no neurological deficits. (Tr. 271, 222, 302.) A lumbar spine x-ray taken on December 26, 2012, showed only mild osteoarthritis. (Tr. 254.) A cervical spine x-ray taken on the same date showed no fracture and only mild disk space narrowing at C5-6 and C-7. (Tr. 226, 254, 256). A physician also observed in May 2015 that Plaintiff had no focal neurological deficits. (Tr. 294.) As noted by the ALJ, there was no medical evidence Plaintiff could not ambulate or perform fine or gross movements effectively on a sustained basis. (Tr. 33-34.) Moreover, the ALJ observed that Plaintiff walked in and out of the hearing room unassisted and sat normally throughout the hearing. (Tr. 34.) *See Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) (finding an ALJ may base her decisions, in part, on her observations of the claimant).

Although Plaintiff also alleged disability based upon arthritis of her knees, the medical evidence on the record does not support a finding that she was severely limited by this condition. On April 18, 2014, Plaintiff saw consultative examiner Dr. Barry Burchett, who noted that

9

although Plaintiff demonstrated moderate crepitus[4] of the right knee with range of motion, she had no tenderness, redness warmth, swelling, fluid, laxity or crepitus of the knees. (Tr. 263.)

The following additional results of Dr. Burchett's examination of Plaintiff support a finding that Plaintiff has mild or moderate limitations due to her impairments: Dr. Burchett recorded that Plaintiff's reflexes were normal, that she walked without assistance and ambulated with a normal gait. He also observed that she had 4/5 grip strength in her right hand and a 5/5 grip strength in her left hand with only mild synovial swelling of the metaphalangeal joints. Dr. Burchett noted Plaintiff had full range of motion in her cervical spine, only minimally decreased range of motion of the lumbar spine with no tenderness, and her straight-leg raise testing was negative (Tr. 32, 223, 262-63, 265).

Furthermore, the ALJ did not err in concluding with treatment, there was "no persuasive evidence to suggest or support that [Plaintiff's] conditions [were] not generally stable or controlled." (Tr. 34.) The record reflects Plaintiff reported improvement after taking medication and attending physical therapy in February 2013 (Tr. 32, 280). Physical therapy notes dated February 18, 2013, documented Plaintiff was capable of performing all functional activities with less than 10 percent restriction or elevated pain. (Tr. 32, 33, 280).

Plaintiff argues the ALJ failed to consider material evidence in the record supporting Dr. Patel's opinion. Specifically, Plaintiff points to various positive SLR findings in Dr. Patel's treatment notes, the February 2016 examinations by Dr. Dennis Dusek and Dr. Amy Zippay, and a MRI taken on February 26, 2016. Dr. Dusek examined Plaintiff, who reported her pain had worsened, and then referred her to Dr. Zippay, who diagnosed Plaintiff with low back pain and

---

[4] Crepitus is the "[n]oise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions. Stedmans Medical Dictionary 211900 (2014).

degenerative disk and joint disease. The MRI showed annular disc bulge at L2-3, L-3-4, and L4-5 with stenosis. (Tr. 33, 318.)   Plaintiff contends this evidence supports Dr. Patel's opinion entitling it to controlling weight.  The Court finds Plaintiff's argument misplaced.

First, much of the evidence relied on by Plaintiff, including the MRI and the examinations by Dr. Dusek and Dr. Zippay, was obtained *after* Plaintiff's last date insured—December 31, 2015.  A claimant must establish disability prior to the expiration of her insurance to qualify for disability insurance benefits.  *See Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (holding that only claimant's medical condition as of the date she was last insured is considered).  Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

In her Decision, the ALJ acknowledged medical evidence in the record obtained *after* the date Plaintiff was last insured, but clearly identified this evidence as falling outside the insured period.  As noted above, the MRI taken on February 26, 2016, and the February 2016 examinations by Dr. Dennis Dusek and Dr. Amy Zippay fall outside the insured period.[5]  While the ALJ was certainly permitted to consider evidence after the date Plaintiff was last insured to better elucidate Plaintiff's condition during the time she was insured, the ALJ was not required to base her decision on this evidence.  Moreover, Plaintiff reported to Dr. Dusek her pain had worsened.  "New evidence is required to pertain to the time period for which benefits are sought

---

[5] Also falling outside the insured period is a radiograph of Plaintiff's knees, taken on February 9, 2016.  As noted by the ALJ, the results of this x-ray do not support Dr. Patel's opinion as it showed "no congenital, metabolic or neoplastic disease as well as no fracture, dislocation, or calcification with well-centered patellofemoral joints showing excellent cartilage thickness." (Tr. 33, 308.)

11

and cannot concern *subsequent deterioration* of a previous condition*." Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (citing *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997)) (emphasis added).

As stated above, Plaintiff also contends Dr. Patel's opinion is supported by positive SLR test results from examinations by Dr. Patel that took place *within* the insured period. To the extent Plaintiff's positive SLRs conflict with the substantial evidence supporting more moderate limitations and Dr. Burchett's recording of Plaintiff's negative SLR results, it was the ALJ's duty to resolve conflicts in the evidence and the Court may not substitute its opinion for the ALJ's. *Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013). Moreover, while evidence that detracts from the ALJ's decision should be considered, an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In addition, even if the positive SLR results recorded by Dr. Patel and the records obtained after the date Plaintiff was last insured support Dr. Patel's opinion, Plaintiff's testimony about her daily activities is inconsistent with this evidence and Dr. Patel's disabling limitations as discussed below.

The ALJ may reject the opinion of the treating physician when there is conflicting testimony in the record. *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008). This includes testimony by the claimant herself. *Id.* If a doctor evaluates a patient as having more physical limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency in evaluating and weighing the treating physician report. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

The Court finds substantial evidence supporting the ALJ's conclusion that Dr. Patel's severe limitations are inconsistent with the record of Plaintiff's daily activities. Here, Plaintiff testified she could perform basic hygiene and grooming, prepare meals, perform household chores, drive a car, shop in stores, manage finances, read and use a computer, care for and walk her 7 dogs, babysit her granddaughter in the morning and take her to daycare. While Plaintiff testified—and the ALJ acknowledged—that she performs some of these activities with help, receiving assistance does not preclude an ALJ from considering such activities when judging the consistency of a claimant's complaints. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001). Given the evidence of Plaintiff's daily activities, the ALJ was justified in determining they were inconsistent with the severe restrictions set forth by Dr. Patel, including her determination that Plaintiff's pain would frequently interfere with her ability to concentrate and maintain attention. *Cf. Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

Furthermore, the ALJ did not err in discounting Dr. Patel's opinion because the medical source statement consisted of a pre-printed form questionnaire submitted to her by Plaintiff's attorney, contained internal inconsistencies, and was not completed by Dr. Patel. The medical source statement was comprised of two pages. The first page of the form merely required Dr. Patel to check boxes with options for the patient's functional capacity. The second page contained four questions. Dr. Patel provided brief responses to the first three questions, but did not answer the fourth question regarding Plaintiff's ability to perform sedentary work. As noted by the ALJ, Dr. Patel's assessment of Plaintiff's functional capacity on page one conflicted with certain symptoms and clinical findings she listed on page two. Although Dr. Patel stated on page two that Plaintiff's hand was swollen and painful, she checked boxes indicating Plaintiff had the full ability to use the upper extremities for reaching, pushing, pulling, grasping, holding, gross

manipulation, and fine manipulation. (Tr. 268-69.) Dr. Patel did not explain this inconsistency. *See Davidson v. Astrue,* 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

The regulations provide "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3)(4). The ALJ did not err in considering Dr. Patel's failure to fully complete the medical source statement, the inconsistencies it contained, or its cursory, conclusory nature in determining the weight to afford Dr. Patel's opinion. *See Rouse v. Colvin*, No. 4:15-CV-466-CEJ, 2016 WL 866087, at *18 (E.D. Mo. Mar. 7, 2016) (finding substantial evidence to support the ALJ's conclusion that the medical source statements were entitled to little weight as they were conclusory forms that consisted of mere checked boxes, without narrative explanation or citation to medical or other evidence to support their conclusions). *See also McDade v. Astrue*, 720 F.3d 994, 999–1000 (8th Cir. 2013) ("[A] treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement.") (quotation marks and citation omitted)). The Eighth Circuit has sustained the discounting of a treating physician's assessment because it supplied conclusory opinions consisting of a series of check marks assessing residual functional capacity, and because the assessment was contradicted by medical records. *Johnson v. Astrue*, 628 F.3d 991, 994–95 (8th Cir. 2011).

Here, the Court finds substantial evidence supports the ALJ's determination that the severe limitations opined by Dr. Patel are not supported by the totality of the evidence on the record and are inconsistent with the record as a whole. Therefore, the ALJ did not err in failing to afford Dr. Patel's opinion controlling weight. Moreover, the Court also finds the application of

the factor test set forth under 20 C.F.R. § 404.1527(c) supports the ALJ's finding that Dr. Patel's opinion was entitled to partial weight. As noted above, pursuant to 20 C.F.R. § 404.1527(c), the amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors.[6] Although Dr. Patel's opinion might have been afforded more weight pursuant to the first two factors, because she was a treating source who had examined Plaintiff several times, the ALJ was entitled to accord her opinion less weight based upon the remaining factors, particularly the "Supportability" and "Consistency" factors. The ALJ discusses in detail the medical evidence as well as other evidence of record supporting mild to moderate limitations versus the disabling limitations opined by Dr. Patel. Because the ALJ's determination is supported by good reasons and substantial evidence, the Court must defer to it. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Finally, Plaintiff also briefly challenges the significant weight the ALJ gave to the opinion of Dr. Burchett, the consultative examiner. Dr. Burchett examined Plaintiff on April 18, 2014, and noted Plaintiff had mild lumbar flexion limitation, no spasm or significant tenderness in her back, a good range of motion in cervical spine, brisk and symmetrical upper and lower extremity reflexes, negative straight leg raising, and only moderate synovial swelling in the right #2 and 3 MP joints. (Tr. 260-265.) The ALJ gave Dr. Burchett's opinion significant weight, concluding that his findings of "mild limitations" and his "overall normal general examination"

---

[6] The ALJ stated in her decision that she considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. (Tr. 31.) Although the ALJ did not address each factor individually, she thoroughly reviewed the medical and other evidence of record, then addressed the supportability and consistency factors in her Decision. *See Wade v. Colvin*, 26 F. Supp. 3d 1073, 1081, n.1 (D. Colo. 2014) (stating that the ALJ's suggestion that he considered all factors is sufficient to substantiate the conclusion that he discharged his responsibility in this regard, at least insofar as the record suggests no reason to dispute that assertion). *See also Cox v. Apfel*, No. CIV. A. 99-2296-JWL, 2000 WL 1472729 at * 8 (D. Kan. Feb. 24, 2000).

of Plaintiff were "consistent with treatment notes." (Tr. 34.) In disputing the weight given to his opinion, Plaintiff contends Dr. Burchett's negative SLR finding conflicts with positive SLR testing done by Dr. Patel. However, as discussed above, substantial evidence supports the ALJ's determination that Dr. Patel's opinion was only entitled to partial weight, and to the extent a specific conflict in medical evidence resulted, it was the ALJ's duty to resolve conflicts in the evidence and the Court may not substitute its opinion for the ALJ's. *Phillips*, 721 F.3d at 629.

Plaintiff also argues the ALJ erred in not recognizing Dr. Burchett's opinion predated Dr. Patel's opinion by a year. Plaintiff cites to no authority for her proposition that the ALJ was required to address the timing of Dr. Burchett's opinion in weighing it. Moreover, it appears the ALJ was aware of the timing of both opinions, as she noted their dates in her Decision. Moreover, as discussed above, a finding of mild to moderate limitations, such as those opined by Dr. Burchett, is supported by substantial evidence on the record. Accordingly, the ALJ did not err in giving Dr. Burchett's opinion significant weight.

### 2. The ALJ Failed to Properly Consider the RFC

The ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1467(a), except

> occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl; no hazards such as unprotected heights and moving mechanical parts; frequent handling and fingering with the upper right extremity.

(Tr. 31.) Plaintiff argues the ALJ should have included a sit-stand option in her RFC. In support of her contention, Plaintiff relies on the medical source statement in which Dr. Patel opined she could not perform sustained sitting, which Plaintiff reasserts was entitled to significant, if not controlling weight by the ALJ. As discussed above, the Court finds substantial evidence

supporting the ALJ's determination that Dr. Patel's opinion was only entitled to partial weight. Thus, the ALJ did not err in excluding Dr. Patel's limitation from Plaintiff's RFC.

Plaintiff also argues the way the ALJ conducted the examination of the vocational expert, in particular the order in which she posed hypotheticals to the VE, shows she was biased in excluding a sit-stand option from Plaintiff's RFC. At the hearing, the ALJ's first hypothetical question assumed an individual of the same age, education, and past work as Plaintiff, working at a *light* exertional level with the limitations recited above. (Tr. 72). The second hypothetical added a sit-stand limitation to the first hypothetical. (Tr. 73.) Then, in her third hypothetical, the ALJ asked the VE to assume the same hypothetical as hypothetical number two, but to change the exertional level from light to sedentary. (Tr. 75.) The VE testified there were no jobs in the national economy for such an individual (who was limited to sedentary work with all the limitations recited above, plus a sit-stand option). (Tr. 75.) Then the ALJ, in her fourth hypothetical, asked the VE to assume the same hypothetical individual as hypothetical number one, except that the individual can work at a sedentary exertional level. (Tr. 75.) So, like the first hypothetical, the fourth hypothetical excluded the sit-stand option limitation. The VE testified that there were a number of sedentary jobs available for this type of individual. (Tr. 75-76.)

Plaintiff claims that because the ALJ included the sit/stand option in the third hypothetical and removed it in the fourth, she determined Plaintiff's RFC after the VE's testimony to align with her preconceived decision that Plaintiff was not disabled. Plaintiff asserts "ALJ's generally add limitations to each successive hypothetical; ALJ's do not remove limitations from the next hypotheticals." (ECF No. 21 at 14). The Court finds no merit to Plaintiff's argument that the order of the ALJ's questions to the VE demonstrated bias. It is just

17

as plausible that the ALJ found it more efficient when posing the third hypothetical to take the individual described in the previous second hypothetical and change only the exertional level. Notably, Plaintiff cites to no other evidence of bias on the part of the ALJ.

ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. *Perkins v. Astrue*, 648 F.3d 892, 902–03 (8th Cir. 2011). *Partee v. Astrue,* 638 F.3d 860, 865 (8th Cir. 2011). "There is a 'presumption of honesty and integrity in those serving as adjudicators." *Partee v. Astrue,* 638 F.3d 860, 865 (8th Cir. 2011) (quoting *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). A claimant bears the burden of producing sufficient evidence to overcome this presumption. *Perkins v. Astrue*, 648 F.3d 892, 902–03 (8th Cir. 2011). The Court concludes that the order of the hypotheticals posed to the VE, standing alone, is insufficient to establish bias on the part of the ALJ.

### D. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id*. *See also Buckner*, 646 F.3d at 556; *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff was not disabled. Because substantial

evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. The Court may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Deborah Robbins's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

So ordered this 21st day of March, 2019.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE